ANGELO G. MARCHESCHI, Plaintiff-Appellee, *v.* P. I. CORPORATION *et al.*, Defendants-Appellants.

First District (5th Division)    No. 78-2076

Opinion filed May 16, 1980.

Palmer, Blackman & Mancini, P. C., of Hinsdale, for appellants.

Sapoznick, Sheridan & Freidin, of Chicago (Robert P. Sheridan, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Corpus Christi Bank & Trust Company (Corpus Christi) originally brought this action to register a Texas judgment against defendants P. I. Corporation and Eugene Pullano (Eugene) in Illinois. The judgment was registered in Illinois in the amount of $75,264.67, and this order was upheld on direct appeal. (*Corpus Christi Bank & Trust Co. v. Pullano* (1979), 69 Ill. App. 3d 604, 388 N.E.2d 180.) Corpus Christi brought supplementary proceedings against P. I. Corporation and Eugene, including the filing of an affidavit for garnishment against Banco di Roma (the Bank), alleging that the garnishee held certain property belonging to Eugene. Pursuant to court order, the Bank answered that among other things, it had an assignment of 95,287 shares of Old Heritage Corporation stock in Eugene's name which it held as collateral for a small business loan of $210,000 made to Pullano & Sons, Inc. Since the stock held as security for the loan and its sale is the subject of this appeal, a detailed analysis of the loan and security agreements is necessary.

The record reflects that Eugene and Mary Louise Pullano, Louis Pullano and Marietta Pullano (the Pullanos) pledged the following shares of Old Heritage Corporation stock as collateral for the loan made by the Bank:

(1) Eugene Pullano—95,287 shares
(2) Eugene Pullano and Mary Louise Pullano—7437 shares
(3) Eugene Pullano and Louis Pullano—1000 shares
(4) Louis Pullano and Marietta Pullano—1000 shares.

Eugene and Louis Pullano signed a note to secure the loan. Eugene and each of the other Pullanos signed identical "General Pledge Agreements" when they gave the stock as collateral. Included in the agreement were the following pertinent provisions:

### "GENERAL PLEDGE AGREEMENT

As collateral security for the payment of any note and of all indebtedness, obligations or liabilities of the undersigned or any of them to Banco di Roma * * * of every kind or character, now or hereafter existing, absolute or contingent, joint or several, or joint and several, secured or unsecured, due or not due, direct or indirect, expressed or implied in law, contractual or tortious, liquidated or unliquidated, at law, or in equity, or otherwise, and whether heretofore or hereafter incurred or given by the undersigned or any of them as principal, surety, endorser, guarantor or otherwise, and whether created directly or acquired by Bank by assignment or otherwise, (all of which are herein collectively called 'liabilities'), the undersigned hereby pledges and delivers and/or gives to Bank a general lien upon and/or right of set-off as to the following: all the securities, hereinabove set forth and described * * * to secure any liability so acquired by Bank as aforesaid, * * *.

Every liability of the undersigned and any one or more of them to Bank shall, without notice to any of the undersigned, become due and payable forthwith, unless Bank otherwise elects, if (1) any amount payable on such liability to Bank is not paid when due; (2) * * *.

When any liability of any of the undersigned to Bank becomes due and payable, by its terms or pursuant hereto Bank may (1) appropriate and apply toward the payment and discharge of any such liability, moneys on deposit or otherwise held by Bank for the account of, to the credit of, or belonging to any of the undersigned, (2) sell or cause to be sold any collateral security, * * *. Any sale of collateral may be made without demand of performance and any requirement of the Code for reasonable notice to the undersigned shall be met if such notice is mailed, postage prepaid, to any one of the undersigned at his address as it appears herein or as last shown on the records of Bank at least ten business days before the time of sale, disposition or other event giving rise to the

notice. * * *. The proceeds of any sale, or sales, of collateral security shall be applied by Bank in the following order: (1) To expenses, including expense for any legal services, arising from the enforcement of any of the provisions hereof, or of any of the liabilities, or of any actual or attempted sale; (2) to the payment or the reduction of any liability of any of the undersigned to Bank with the right of Bank to distribute or allocate such proceeds as Bank shall elect, and its determination with respect to such allocation shall be conclusive, however making proper rebate of interest or discount in case of allocation to any item not due; (3) to the payment of any surplus remaining after payment of the amounts mentioned, to the undersigned or to whomsoever may be lawfully entitled thereto.

* * *

Rights and powers of Bank under this Agreement shall inure to the benefit of its successors and assigns and any assignee of any liability secured hereby. * * *."

Corpus Christi assigned all its interest in the Texas judgment to Angelo Marcheschi on June 28, 1978. The assignment also appointed Marcheschi as attorney for Corpus Christi to collect the money due under the judgment. Marcheschi brought a petition pursuant to sections 14 and 18 of the garnishment act (Ill. Rev. Stat. 1977, ch. 62, pars. 46(b) and 50) in which he offered to tender the balance of approximately $162,891.62 due on the loan and sought that the Bank be ordered to assign the loan and to turn over all collateral held thereunder to him. He further intended to sell the collateral pursuant to the loan and to apply the proceeds to: (1) the payment of the loan to Pullano & Sons; and (2) the satisfaction of the judgment against Eugene.

On July 7, 1978, the Bank responded to the petition and sought an order declaring that the interests of the Pullanos and Pullano & Sons, Inc., in the collateral be either forfeited or protected from garnishment. Mary Pullano and Pullano & Sons, Inc., filed a petition for leave to intervene in the instant suit, which was stricken and dismissed on Marcheschi's motion on August 2, 1978. The same order defaulted the interests of Louis and Marietta Pullano for their failure to appear and ordered Marcheschi to tender the loan balance to the sheriff, and further that the Bank delivered the assigned note and all collateral to the sheriff. The order also provided that Marcheschi could sell any and all of the collateral and apply the proceeds first to the loan indebtedness and then to the judgment debt. Mary Pullano's motion to reconsider this order was denied on August 11, 1978.

Marcheschi filed a petition in which he represented that he had deposited the loan balance with the sheriff and that the Bank had done

likewise with the note and collateral. It went on to state that the Pullano & Sons, Inc., note was in arrears, and that pursuant to the terms of the note, Marcheschi, as holder of the note, was entitled to sell any and all of the collateral and apply the proceeds to paying the debt. Marcheschi petitioned the court to authorize the sheriff to tender the Old Heritage Corporation stock to Central National Financial Corporation, which had made a tender offer to purchase the stock, and that the sheriff use the funds first to repay the loan and then to satisfy the judgment.

In response to this petition, the Pullanos stated that they had pledged their own shares of stock as security for the loan to Pullano & Sons, Inc., which Marcheschi sought to sell. They asserted that pursuant to the terms of the pledge agreement, after repayment of the loan to the Bank, all excess proceeds or stock must be returned to them. The court ordered that Eugene's stock be delivered to Central National, that all the proceeds go to Marcheschi, and that he use the proceeds pursuant to the terms of the note.

A report of distribution of proceeds from the sale of only Eugene's shares revealed that $171,739.49 was received and that $171,245.86 was owed by reason of the purchase of the note plus attorney's fees and interest. Of the money realized $120,000 was applied to the loan payment, while $51,739.49 was held as collateral for payment of the loan. The Pullanos claimed that more than enough proceeds had been realized from the sale of Eugene's stock to satisfy the Bank's loan and that Marcheschi had no further right to their stock which had been pledged as security for the loan. They sought an order to have Marcheschi apply all of the assets of the sale of Eugene's shares to the repayment of the loan. Marcheschi argued that as holder of the note, and pursuant to the collateral pledge agreement, he could use any of the collateral to satisfy the debt of Pullano & Sons, Inc., and that the proceeds of the sale of Eugene's collateral could be applied later, presumably to satisfy the judgment debt. On September 25, 1978, the trial court denied appellant's petitions and "empowered" Marcheschi to conclude the sale of the remaining shares of stock. On October 5, 1978, the court ordered that the remaining stock be sold to the highest bidder at a public judicial sale and the proceeds turned over to Marcheschi. A sheriff's report was filed which showed that the remaining stock was sold to Marcheschi and brought gross proceeds of $14,155.50. This appeal followed.

OPINION

Marcheschi contends that the Pullanos cannot maintain this appeal because: (1) successive petitions seeking the same relief were denied by the trial court and not appealed, and the order appealed from again denied the same relief and was therefore proper; and (2) none of the

Pullanos were proper parties below and the denial of Mary Pullano's petition to intervene was not appealed.

The first ground is disposed of by discussion of the merits of the case. If the denial of their petition in the trial court was correct, the Pullanos could not raise the same question for a repeated consideration by the court. However, since it appears that the initial ruling was erroneous as were the subsequent ones, the Pullanos have preserved the issue for review and the issue is properly before this court.

■■ The fact that the Pullanos were not proper parties below should not prevent their bringing this appeal. A nonparty has standing to appeal if he has a direct, immediate and substantial interest in the subject matter, which would be prejudiced by the judgment or benefited by its reversal. (*Flanagan v. Hulman* (1970), 121 Ill. App. 2d 382, 387, 257 N.E.2d 599; *In re Estate of Tomlinson* (1976), 65 Ill. 2d 382, 387, 359 N.E.2d 109.) Supreme Court Rule 301 (Ill. Rev. Stat. 1977, ch. 110A, par. 301) contemplates appeals by nonparties who can meet this test. (*In re Estate of Tomlinson.*) Clearly, the Pullanos have a direct interest in the stock which was prejudiced by the trial court's judgment and which would be restored by a reversal of that order. The Pullanos therefore have standing to prosecute this appeal.

■■ It was also unnecessary for Mary Pullano to appeal the denial of her petition for leave to intervene. A denial of a petition to intervene is not a final and appealable order in the absence of such a finding in the order. (*Chicago, Milwaukee, St. Paul & Pacific R.R. Co. v. Harris Trust & Savings Bank* (1978), 63 Ill. App. 3d 1012, 1020, 380 N.E.2d 835.) The order became final on September 25 when the judgment disposing of the Pullanos' rights in the stock was entered. (See *Chicago, Milwaukee, St. Paul & Pacific R.R. Co. v. Harris Trust & Savings Bank; Morris v. Carroso* (1937), 292 Ill. App. 620, 627-28, 11 N.E.2d 816.) By bringing this appeal, Mary Pullano was necessarily contesting the finding that she did not have a sufficient interest to intervene since she would have to establish such an interest in order to have standing to appeal. This matter is properly before this court for review.

Turning to the merits of the appeal, the Pullanos contend that the trial court erred in permitting Marcheschi to dispose of their stock which was garnished with Eugene's stock. Marcheschi asserts that the Pullanos misapprehend the nature of the trial court proceedings. He maintains that he took the rights of the bank by reason of the assignment and that the sale of the Pullanos' shares was proper according to the contractual provisions of the pledge agreements. He views the transaction as a sale of collateral after default on the loan and not as a sale of garnished property.

In the instant case plaintiff utilized the provisions of the garnishment act (Ill. Rev. Stat. 1977, ch. 62, pars. 33 through 52) to discover and to

reach the shares of stock. Section 14 of that act (Ill. Rev. Stat. 1977, ch. 62, par. 46) provides in pertinent part:

"(b) If mortgaged or pledged property is in the hands of a garnishee, or property is held for the payment of a debt to the garnishee, the judgment creditor may, under order of court, pay or tender the amount due to the garnishee; and the garnishee shall thereupon deliver the property to the officer holding the execution against the judgment debtor.

\* \* \*

(e) Property received by an officer as described in this section shall be sold in the same manner as if taken on execution, provided that from the proceeds of sale the officer shall repay the judgment creditor the amount paid the garnishee for the redemption, with interest, or shall indemnify the judgment creditor for acts done or performed pursuant to order of court in the redemption."

Garnishment was unknown at common law and is a purely statutory procedure (*Roth v. Kaptowsky* (1948), 401 Ill. 424, 429, 82 N.E.2d 661; *Cole v. Shanior* (1979), 69 Ill. App. 3d 505, 507, 387 N.E.2d 860) to be strictly construed (*Baird v. Senne* (1973), 13 Ill. App. 3d 226, 228, 300 N.E.2d 554). The purpose of the garnishment act is to make assets belonging to a judgment debtor available for the satisfaction of an underlying judgment. (*Harris v. Valen Construction Co.* (1964), 49 Ill. App. 2d 265, 267, 200 N.E.2d 70; *Wolff v. Halloway* (1969), 116 Ill. App. 2d 270, 272, 253 N.E.2d 596.) In determining the rights of a judgment creditor against a garnishee, the judgment creditor stands in the shoes of the judgment debtor. (*Cohen v. North Avenue State Bank* (1940), 304 Ill. App. 413, 417, 26 N.E.2d 691; *Hillmer v. Chicago Bank of Commerce* (1940), 304 Ill. App. 430, 434, 26 N.E.2d 726.) In order to impose liability on a garnishee, the judgment creditor must assert a claim against the garnishee which the judgment debtor himself could have maintained. (*Wolff v. Halloway* (1969), 116 Ill. App. 2d 270, 272; *Cole v. Shanior* (1979), 69 Ill. App. 3d 505, 507.) A judgment creditor has no greater right to property in the hands of the garnishee than the judgment debtor, and it is only the judgment debtor's property and credits which can be reached by garnishment, not the property and credits which garnishee has in trust for others. (*Morris v. Carroso* (1937), 292 Ill. App. 620, 625, 11 N.E.2d 816; *Harris v. Valen Construction Co.* (1964), 49 Ill. App. 2d 265, 267.) The effect of garnishment is to subrogate the judgment creditor to whatever rights the judgment debtor may have against the garnishee. *Liberty Leasing Co. v. Crown Ice Machine Leasing Co.* (1974), 19 Ill. App. 3d 27, 29, 311 N.E.2d 250.

Upon payment of the outstanding balance of the loan to the Bank, Eugene's pledged stock, including his interest in the jointly owned shares,

would be available for the satisfaction of the judgment. The Pullanos do not contest the sale of Eugene's interest but contend that their shares were improperly subjected to garnishment. They argue that since Eugene had no claim or right to their shares, Marcheschi could not have a greater right to the shares so as to make them the subject of the instant garnishment. ◼◼ From the foregoing authorities it is clear that the Pullanos' shares could not be directly garnished and sold to pay the debts of Eugene owed to the instant judgment creditor. (See also *Alexander v. Live Stock National Bank* (1935), 282 Ill. App. 315.) However, Marcheschi contends that the sale of the Pullanos' interests was proper because as assignee of the loan he received all of the pledged stock, the note, the pledge agreements and all of the other incidents of the loan. As assignee of the loan, Marcheschi claims the same rights as the Bank and was the holder of the note, the collateral, and the judgment. He argues that he was entitled to apply the proceeds of the sale of Eugene's stock to either the loan or the judgment, whichever he deemed better. He points specifically to the language in the pledge agreements whereby the Pullanos agreed that the collateral was to secure any liabilities which became due to the Bank and gave the Bank the power to sell any of the collateral and apply the proceeds to "the payment or reduction of any liability of any of the undersigned to Bank with the right of Bank to distribute or allocate such proceeds as Bank shall elect." In addition, since the pledge agreement provided that the rights and powers of the Bank inured to the benefit of the assignee, Marcheschi argues that he could elect to allocate the proceeds of Eugene's stock between the loan and the judgment. At the time of the sale of Eugene's shares, Marcheschi elected to apply $120,000 to the loan and the remainder to the judgment. Later, after Pullano & Sons, Inc., defaulted on the loan, he contends that he properly sold the Pullanos' shares and applied it to the loan.

While Marcheschi's argument might be compelling outside of a garnishment setting, we find that the garnishment act does not contemplate the transaction that occurred in this case. As noted earlier, the purpose of the act is to make a judgment debtor's property available for the satisfaction of the judgment, and the judgment creditor stands in the debtor's shoes *vis-à-vis* the garnishee. By asserting his position as assignee of the Bank's loan, Marcheschi attempted to step into the garnishee's shoes and assert greater rights to the Pullanos' property than the judgment debtor Eugene had. In so doing he exceeded the purpose of the act and the relief provided by it. By utilizing the remedy provided by the act, Marcheschi must be limited to disposing of only the judgment debtor's property in satisfying his judgment.

In his petition pursuant to sections 14 and 18 of the garnishment act (Ill. Rev. Stat. 1977, ch. 62, pars. 46 and 50), Marcheschi offered to tender

the balance due on the loan to the Bank in return for a transfer of all the security to him and authorization to dispose of the assets and to apply the funds to the bank loan and then to the judgment. Marcheschi sought an order: (1) authorizing his purchase of the loan; (2) compelling assignment of the loan and collateral from the Bank to him; and (3) authorizing the sale of the collateral and application of the proceeds as requested.

The court ordered that Marcheschi deposit the loan balance with the sheriff and that upon the deposit of all the loan documents and collateral by the Bank, the sheriff pay the balance of the loan to the Bank and hold the documents until further order of court. The later order approved the sale of Eugene's stock and empowered Marcheschi to utilize the amounts received according to the terms of the note.

A reading of sections 14 and 18 of the act convinces us that the instant transaction was not authorized by the statute. Subsection 14(b) provides a means of freeing pledged property from a prior claim thus making it available for execution and satisfaction of the judgment. Upon payment or tender of the balance due him, the garnishee is to deliver the property to the officer for execution. Subsection 14(e) directs that from the proceeds of the execution sale, the judgment creditor is to be reimbursed the amount he paid to the garnishee to redeem the property. The purpose of the two sections is to free the debtor's property from prior claims and to preserve a creditor's priority in the proceeds for a reimbursement of the redemption price. The effect of this procedure is to discharge the prior mortgage or pledge interest in the security while assuring the satisfaction of the underlying obligation to the pledgee. It does not keep the prior obligation alive, thereby allowing the transfer or assignment of the security subject to the prior obligation. This is particularly significant where the judgment debtor is not the sole owner of the security as in the instant case.

The garnishment act does not define the words "pay" or "redemption," and in the absence of a statutory definition, courts will assume the words have their ordinary and popularly understood meanings (*People v. Blair* (1972), 52 Ill. 2d 371, 373, 288 N.E.2d 443). The verb "pay" has been defined as follows:

> "To discharge a debt; to deliver to a creditor the value of a debt, either in money or in goods, for his acceptance." Black's Law Dictionary 1285 (4th ed. 1975).

The word "redemption" has been defined in pertinent part as follows:

> "The liberation of a chattel from pledge or pawn, by paying the debt for which it stood as security.
>
> Repurchase of notes, bills, or other evidences of debt, (particularly bank-notes and paper-money,) by paying their value

in coin to their holders." Black's Law Dictionary 1443 (4th ed. 1975).

In the world of mortgages, the recognized purpose of redemption is to benefit the debtor through the satisfaction of as many of his debts as possible, and, equally, to benefit creditors by affording them an opportunity to obtain payment of their judgments. (*Wojcik v. Stolecki* (1952), 411 Ill. 443, 447, 104 N.E.2d 288; *Supreme Savings & Loan Association v. Lewis* (1970), 130 Ill. App. 2d 16, 23, 264 N.E.2d 857.) This purpose is equally applicable to the areas of chattel mortgages and pledges. By using the words "pay" and "redemption" in section 14 of the garnishment act, the legislature must have intended a liberation or freeing of the pledged property through satisfaction of the debt owed by the debtor to the pledgee. The statute does not authorize an assignment of the prior lien nor a substitution of the creditor for the garnishee on the obligation. Subsection 14(e) adequately protects the priority of the judgment creditor in the proceeds to the extent that he receives reimbursement of his "payment" out of the sale proceeds so that assignment or another method of protection is unnecessary. We find no authority in the statute for Marcheschi's request for permission to purchase the loan or take it by assignment. Furthermore, subsection 18(1)(c) of the act (Ill. Rev. Stat. 1977, ch. 62, par. 50(1)(c)) provides that if the garnishee has property in his possession, custody or control belonging to the defendant or which he is obligated to deliver to the defendant, with or without condition, the court may make an order discharging any lien on the property. There is no power provided by that section to allow the assignment of a prior lien and the related obligation to the garnishor and we find that none was intended.

Therefore, upon the payment of the balance of the loan to the garnishee pursuant to subsection 14(b), the secured note was satisfied and discharged and the pledge securing its payment was released. At that point all of the stock had been redeemed and the Pullanos' shares should have been returned to them, while Eugene's shares should have been turned over to the sheriff for execution. The sale of Eugene's shares produced enough money to reimburse Marcheschi for his redemption costs with interest and the excess should have been applied to the judgment. This result is consistent with the application of the funds which he requested in his petition. To sanction the procedure used in this case would allow the garnishment act to be used to indirectly reach nondebtor's property to satisfy the debtor's liabilities.

We realize that subsection 14(b) does not deal specifically with the problem of multiple pledgors of property, not all of whom are judgment debtors. However, in its practical application, this interpretation of that subsection can be easily applied. If the value of the pledged property of

the debtor alone were inadequate to reimburse the creditor for his redemption costs, the creditor would not attempt to use that subsection to reach the property. If the value of the debtor's property exceeded the underlying obligation, it would be worthwhile to satisfy the debt and apply any excess to the judgment.

We therefore hold that upon Marcheschi's payment of the remaining balance due to the bank on the loan, the loan was satisfied and discharged and the collateral was unencumbered. While Eugene's shares were properly delivered to the sheriff for sale, the Pullanos' shares should have been returned to them.

Accordingly, the orders of the circuit court ordering the judicial sale of the Pullanos' stock and approving the sheriff's report of sale and distribution relative to that stock are reversed, and the cause is remanded with directions to enter an order returning the proportionate interests of the respective Pullanos in kind or in the gross proceeds of the sale thereof with statutory interest from the date of sale, and for such further proceedings as may be necessary consistent with this opinion.

Orders reversed and cause remanded with directions.

LORENZ and WILSON, JJ., concur.