No. 85-445

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

MONTANA POWER COMPANY,

        Petitioner and Respondent,

-vs-

MONTANA DEPARTMENT OF PUBLIC SERVICE
REGULATION, MONTANA PUBLIC SERVICE
COMMISSION, and STATE OF MONTANA,

        Respondents and Appellants.

---

APPEAL FROM: District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Mark Sullivan, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hon. Mike Greely argued, Attorney General, Helena,
Montana
Robert Nelson argued, Public Service Commission,
Helena, Montana

    For Respondent:

        John Alke argued for Montana Power, Helena, Montana
Pamela Merrell, MPC, Butte, Montana

---

Submitted: October 23, 1985

Decided: November 27, 1985

Filed: NOV 27 1985

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

We determine in this case that the attempted appeal by the Attorney General from the judgment of the District Court in the underlying cause in the Second Judicial District, Silver Bow County, must be dismissed for the reasons hereafter stated. Further we determine that the appeal of the Montana Department of Public Service Regulation, Montana Public Service Commission must also be dismissed as untimely.

I.

On September 30, 1983, Montana Power Company (MPC) filed an application with the Montana Department of Public Service Regulation, through the Montana Public Service Commission (PSC) to increase the utility's electrical rates to produce an annual gross income increase of $96,367,013. It was the largest electrical rate increase request ever filed in the State of Montana. Opposition to the proposed rate increases developed early, and parties appeared before the PSC in opposition either as protestants or as intervenors. Protestants included James C. Paine, the Montana Consumer Counsel, and his staff attorney, John Allen. Intervenors included Northern Plains Resource Council, Montana Irrigators, District 11 Human Resources Council, Ideal Basic Industries, ASARCO, Champion International, Conoco, Missoula County, Atlantic Richfield, Stauffer Chemical, Exxon, L.I.G.H.T., Butte Community Union, Montana Association of Senior Citizens, and the United States Air Force. The Attorney General made no formal application or appearance before the PSC either on his own behalf or on behalf of the State of Montana as an interested party.

The application was given docket no. 83.9.67 by the PSC, and several interim orders followed therein by the Commission. On August 3, 1984, the Commission handed down the critical order which became the basis of contention in this action. In essence this order of the Commission granted MPC authority to increase its electrical rates to generate additional revenues in the amount only of $4,106,915 (a figure later amended) and, most importantly, denied in toto MPC's application to increase its rates to recover costs associated with the construction of its steam power plant known as Colstrip Unit 3.

The PSC order of August 3, 1984 is long and complicated, but generally it may be stated that the PSC determined that no portion of Colstrip Unit 3 was used or useful in the generation or supply of electricity for the Montana Power Company consumers, and therefore the PSC refused to include its value in MPC's rate base. The PSC determined that based on a 1982 test year, the demand for energy by MPC's electrical users could be satisfied through utilization of other less expensive resources and through modification of the maintenance schedule of Colstrip Units 1 and 2. The less expensive resources were a natural gas-fired facility known as the "Bird Plant" owned by MPC, and the available electricity from the Hanford Project, a Washington State nuclear energy facility, whose electricity the utility had purchased in the past. The MPC had been offered a contract from Hanford Energy for electricity for a 10 year period commencing July 1983, but MPC had rejected it because of Colstrip Unit 3's energy for commercial operation becoming available in early 1984.

On October 10, 1984, MPC filed in the District Court, Second Judicial District, Silver Bow County, its petition for judicial review of the PSC order, under the provisions of the Montana Administrative Procedure Act, § 2-4-701, MCA. Service of copies of the petition was made upon all of the protestants and intervenors of record before the PSC by mail, and in addition service of summons and copies of the petition for review were personally served upon counsel for all of the parties, the protestants and the intervenors. Such personal service was also made on October 12, 1984, upon the Attorney General, and the Chief Assistant Attorney General sent notice of such service upon him to the PSC by letter dated October 17, 1984.

Several of the parties who had contested the MPC in the rate case before the PSC did in fact appear in the District Court action for review. They included, besides the PSC, which was the respondent, intervenors Champion International Corporation, Conoco Inc., the Montana Consumer Counsel, and Montana Irrigators Inc., but did not include the Attorney General, who made no formal appearance in the District Court case on his own behalf or on behalf of the State of Montana as an interested party.

After receiving briefs and conducting a hearing, on June 17, 1985, the District Court entered findings of fact, conclusions of law and order, in effect reversing the August 3, 1984 order of the PSC. The District Court remanded the matter to the PSC "for a proper determination of the need for the Colstrip 3 generating station which is in full compliance with this court's decree," and further the District Court enjoined the Commission from determining or attempting to determine the need for Colstrip 3 generating station on the

MPC's system in the manner that the District Court had found to be unlawful.

After the judgment, on August 16, 1985, Northern Plains Resource Council, District 11 Human Resources Council, and Missoula County, (none of which had earlier appeared in the District Court action, but had appeared before the PSC) filed a motion in the District Court for permission to intervene in the action. On the same date, August 16, 1985, the District Court denied the motion of these parties for intervention.

On August 16, 1985, the Attorney General filed in the District Court a notice of appeal, stating that "notice is hereby given that the State of Montana, through its Attorney General, appeals to the Supreme Court of the State of Montana" from the order and judgment of June 17, 1985 of the District Court.

On August 23, 1985, a notice of appeal was filed by the Montana Department of Public Service and Regulation, Montana Public Service Commission from the District Court's order pursuant to Rule 5 of the Montana Rules of Appellate Civil Procedure.

II.

On September 5, 1985, MPC filed in this Court its motion to dismiss the appeal filed by the Attorney General for lack of standing and further to dismiss the appeal filed by the Montana Public Service Commission as untimely.

MPC contends that the Attorney General has no standing to appeal from the District Court decision in a judicial review proceeding in which the Attorney General did not appear on behalf of the State of Montana. MPC also contends that the appeal of the Montana PSC is invalid because, since it was filed under Rule 5, M.R.App.Civ.P., and not within 60

- 5 -

days of the judgment as required by § 2-4-711, MCA, and 69-3-405, MCA, the PSC appeal is untimely.

In opposing the motion to dismiss, the Attorney General contends that the State was indeed a party to the proceeding below because its Department of Public Service Regulation was the named respondent, that the State was in fact a party to the District Court proceedings, and that the Attorney General was authorized to appeal from the District Court's judgment under his common law and statutory powers.

Both parties rely on State ex rel. Olsen v. Public Service Commission (1955), 129 Mont. 106, 283 P.2d 594. The Attorney General claims that Olsen affirms his broad constitutional, statutory and common law powers as attorney general and that it affirmed the authority of the attorney general to represent the State in district court proceedings; while the Montana Power Company distinguishes Olsen, saying in that case the Attorney General was an actual party taking part on behalf of the State in the District Court proceedings.

The motion of MPC with respect to the Attorney General's appeal puts in question squarely his right as an official or as an attorney representing the State to perfect an appeal from the District Court decision in this case.

There is not before us, and we make no comment on, the legal sufficiency or propriety of the District Court order reversing the PSC. Also not before us are the actions taken by the PSC subsequent to the judgment of the District Court which resulted in electrical rate increases granted by the PSC relating to Colstrip Unit 3 based on a test year of 1983.

III.

Supervision, regulation and control of public utilities are vested in the Montana PSC under the terms of statutes found in Ch. 3, Title 69, MCA. The PSC is given specific power "in its discretion" to investigate and ascertain in the rate-making process the value of the property of every public utility "actually used and useful" for the convenience of the public. Section 69-3-109, MCA.

With respect to the Attorney General, the chapter on the regulation of utilities under § 69-3-110(3) provides:

> Upon the request of the commission, it is the duty of the attorney general or the prosecuting attorney of any county to aid in any investigation, prosecution, hearing, or trial had under the provisions of this chapter and to institute and prosecute all actions or proceedings necessary for the enforcement of this chapter.

The PSC contends that it made no request of the Attorney General for aid in the investigation, prosecution, hearing, or trial of the MPC rate increase proceedings. For that reason, PSC contends that the Attorney General did not represent it in the proceedings before the Commission itself, or in the District Court when MPC filed its petition for judicial review.

(Curiously, Ch. 14 of Title 69, MCA, the part of our code referring to the regulation of railroads by the Public Service Commission provides in section 69-14-132, MCA, that the Attorney General is the attorney of the Commission, but that the Commission may employ special counsel with the approval of the Attorney General to assist in any case. However, section 69-14-132, is confined by its terms to Ch. 14, pertaining to the regulation of railroads.)

In fact, the PSC employs counsel independently of the Attorney General for the purpose of advising the Commission and conducting proceedings and actions relating to rate

regulation and other matters within the purview of the Commission. It is also true that when such counsel of the Commission proceed in court, they do so as special assistant attorneys general under commissions granted in writing to them by the Attorney General. Typical letters from the Attorney General which accompany the certificates of such appointments for counsel include the following or similar language:

> Please find enclosed an official Certificate of Appointment. This Commission will remain in effect until its expiration on January 1, 1989, or termination of your appointment by the Public Service Commission, unless you are otherwise notified by me in writing.

> Please note that sections 25-1-501 and 25-1-502, MCA, require that the Attorney General be notified when a state department or board initiates or intervenes in an action in any court or appeals a judgment or order entered in any court. Special assistant attorney generals should provide a copy of the complaint, counterclaim, crossclaim, or notice of appeal to my office when any of the previously-stated actions are filed in any court. Copies of pleadings and documents handled by you under authority of this Commission need only be provided to me upon specific requests.

Thus under this arrangement, the answer of the PSC in the District Court to the petition for judicial review by the MPC was filed on November 1, 1984. The appearing party was described as

> Department of Public Service Regulation
> Montana Public Service Commission
> 2701 Prospect Avenue
> Helena, MT 59620
> Eileen E. Shore
> Attorney for Respondents

> /s/ Opal Winebrenner
> Opal Winebrenner
> Staff Attorney
> Montana Public Service Commission

- 8 -

Throughout the course of the District Court proceedings then, the representation of the PSC was maintained by its counsel and designated as such.

As we said, the judgment of the District Court was entered on June 17, 1985. Under section 69-3-405, MCA, any party to the action in the District Court has 60 days in which to appeal to the Montana Supreme Court. Thus the final date for the filing of a notice of appeal was August 16, 1985.

The PSC decided on August 9, 1985, by a vote of 4 to 1 of its 5 members not to appeal the decision of the District Court. No other party or intervenor who had appeared in the District Court action chose to appeal.

## IV.

In every appeal, the first question is that of jurisdiction. Hand v. Hand (1957), 131 Mont. 571, 312 P.2d 990.

The constitutional right of appeal is secured only where the laws are followed and compliance is made with the provisions necessary to give the Supreme Court appeal jurisdiction. State Bank of New Salem v. Schultze (1922), 63 Mont. 410, 209 P. 599; State ex rel. Reid v. District Court (1953), 126 Mont. 489, 255 P.2d 693. An appellant is charged with a duty of perfecting his appeal in the manner and within the time provided by law, and unless mandatory statutory provisions are complied with, the Supreme Court acquires no jurisdiction to entertain and determine the appeal. In re Malick's Estate (1951), 124 Mont. 585, 228 P.2d 963.

Statutes relating to appeals are held to be mandatory and jurisdictional, State ex rel. Clark v. District Court (1955), 128 Mont. 526, 278 P.2d 1000, and in a sense

- 9 -

prohibitory and jurisdictional in that they limit the right of appeal to the method expressly provided by statute. Id.

Rule 1 of the Montana Rules of Appellate Civil Procedure provides that "a party aggrieved" may appeal from a final judgment of the District Court. The Attorney General informed us at oral argument that he did not seek in this appeal to represent the PSC as the party appellant. In his notice of appeal, the Attorney General stated that "the state of Montana, through its Attorney General" appealed to the Supreme Court. The first question for us to determine therefore is whether the State of Montana or the Attorney General in his individual capacity, is a "party aggrieved" within the purview of Rule 1, M.R.App.Civ.P., independently of the PSC.

We recognize in the beginning that the business of a public utility is affected with a public interest. We stated so emphatically in Olsen, 129 Mont. at 116, 283 P.2d at 599, pointing out that rates and charges of a public utility could not be regulated or controlled if its business were not affected with a public interest. We also pointed out in Olsen that aside from the public interest generally, the state has a further interest in public utility rates if the state and its institutions might be required to pay unlawful and unreasonable rates. Olsen, 129 Mont. at 117, 283 P.2d at 600. Olsen further confirmed that the Attorney General had the right to protect the public interest in litigation affecting rate regulation proceedings.

We must also keep in mind, from the beginning, the function of the PSC in the rate-regulating process and the relation of courts to that function of the PSC:

> The function of ratemaking is purely legislative in character, whether it is exercised directly by the legislature itself by the enacting of a law fixing rates or by the granting of a charter wherein the rates are regulated, or is exercised by some subordinate administrative or municipal body to whom the power of fixing rates has been delegated; in any of such cases, the completed act derives its authority from the legislature and must be regarded as an exercise of legislative power. Therefore, since the ratemaking power of the state is legislative rather than judicial, it is not within the power of a court to fix, directly or indirectly, the rates to be charged by public utilities, or to control, by writs which can issue only for the purpose of controlling judicial action, the action of properly authorized ratemaking bodies, although it may, in general, restrain the imposition of palpably excessive or confiscatory rates . . .

64 Am.Jur.2d, Public Utilities § 89.

The power of district courts in Montana to review a rate order of the PSC is controlled by section 69-3-404, MCA. The district court must proceed without a jury, and is confined to the record unless application is made to the court to present additional evidence. After the district court enters its order or judgment, appeal to the Supreme Court may be taken pursuant to a special statute for that purpose. Section 69-3-405, MCA, provides that upon judgment "either party to said action may appeal or take the case up on error as in other civil actions."

Thus, Rule 1, M.R.App.Civ.P. provides for an appeal to "a party aggrieved" while section 69-3-405, MCA, provides for an appeal to "either party to said action." We determine in this case that the two provisions must be interpreted in harmony with each other.

We find in this case that the State of Montana, as such, though entitled to appear as a party in interest, was not a party either in the District Court action or in the proceedings before the Montana Public Service Commission. No

- 11 -

formal appearance was made by the State of Montana through its Attorney General in either of those proceedings, for the representation of the separate interest of the state in the proceedings. The PSC, it is true, is an agency of the state, and may be thought to represent the state. However, the posture of the PSC in the District Court review proceedings was not so much to protect the interest of the state of Montana in defending the PSC order (although arguably they may coincide), but rather to protect the propriety and the integrity of the order which it had made denying any value in the MPC rate base to Colstrip Unit 3.

The fact that the State of Montana was not itself a party in either the administrative proceedings or the District Court action is not in itself decisive of the right of the state to appeal here. The test to determine one's standing to appeal is whether one has a direct, immediate and substantial interest in the subject which would be prejudiced by the judgment or benefited by its reversal. Estate of Tomlinson (Ill. 1976), 359 N.E.2d 109, 111. A nonparty has standing to appeal if he has such an interest. Marcheschi v. P.I. Corporation (Ill.App. 1980), 405 N.E.2d 1230, 1234. Thus, nonparties, under the rule of virtual representation, such as members of a class involved in a class action, or nonparties to a will contest may have such an interest as would entitle them to appeal. Marcheschi, supra. If the State were mandated by law to have been made a party to the review proceedings in the District Court or before the Public Service Commission, it would then certainly have a right to appeal. Estate of Tomlinson, supra.

We determine that the State of Montana is not an aggrieved party, or a party to the action in the District

- 12 -

Court entitled to appeal from the District Court judgment. It was pointed out on oral argument that the Attorney General has failed to identify the direct, immediate and substantial interest of the state on which he attempts to appeal here. If the interest of the state is that of a consumer of electricity provided by the MPC, its interest as a consumer is no different from that of the corporate consumers that appeared in the proceedings below, or of John Q. Citizen. Certain corporate or other organizations of consumers did appear and identify their interests before the PSC and the District Court but the State of Montana did not. As a consumer, therefore, the State of Montana is precluded, as would any John Q. Citizen who did not appear below be precluded, from appearing for the first time in the appellate court to relitigate the issues.

The reasons are obvious: neither the PSC nor the District Court was given an opportunity by the State of Montana to identify its separate interest, and to resolve any issues of interest relating to the state. Moreover, the State is not privy to the record developed before the PSC and the District Court. What issues could be framed in the appeal here by the State? The party to the action in the District Court, the PSC has acceded to the terms of the judgment of the District Court. The Attorney General, without a party client, is in effect asking for an advisory opinion to reverse the District Court, a pastime in which this Court does not ordinarily indulge. Indeed, what relief could be granted by us at this juncture? The PSC, within the discretion granted to it by law, has acted to approve the District Court decision. There is nothing now for an

appellate court to determine. The horse is out of the barn, and it is too late to lock the stable door.

The cases are legion that we will not, for the first time on appeal, resolve issues or determine questions not presented in the first instance to the District Court. We hold, therefore, that the State of Montana, as a nonparty to the proceedings before the PSC and the District Court has no standing to appeal, and the appeal on its behalf must be dismissed.

V.

Implicit in this case is the question whether the Attorney General, in his official capacity, is entitled to appeal the decision in the District Court.

The Attorney General is a constitutional officer. Art. VI, § 1, 1972 Montana Constitution. He is constitutionally empowered to be the legal officer of the state and to have the duties and powers provided by law. Art. VI, § 4. His lawful powers and duties with regard to the state are expressed in two lines of a statute: he must "attend the supreme court and prosecute or defend all cases to which the state or any officer thereof in his official capacity is a party." Section 2-15-501(1), MCA. He is therefore the legal officer for the PSC, and it is for that reason that the lawyers employed by the PSC act under the Attorney General in court proceedings as special assistant attorneys general.

In a carefully worded opinion, this Court determined in Woodahl v. State Highway Commission (1970), 155 Mont. 32, 465 P.2d 818, that the Montana Highway Commission had authority to employ and engage outside fee counsel without approval of the Attorney General. In Woodahl v. Montana Board of Natural Resources and Conservation (1973), 163 Mont. 193, 516 P.2d

383, because factual questions were involved and the Attorney General had a right to litigate the same issue in the District Court, this Court refused to determine the right and authority of the Attorney General to require all legal counsel appearing in any judicial proceeding on behalf of elected officials to first secure a commission of authority from the Attorney General to so appear.

In State ex rel. Olsen v. Public Service Commission (1955), 129 Mont. 106, 283 P.2d 594, this Court supported the broad powers of the Attorney General as the first legal officer of the state. We determined in Olsen that the Attorney General not only had the constitutional and statutory powers specifically enumerated for him, but broad common law duties, when not restricted or limited by statute.

In this case, the PSC, as a state agency involved in the District Court action, has acted to accept the decision of the District Court and to forego an appeal. We look then to determine whether the Attorney General, in the light of his broad constitutional, statutory and common law powers, may nevertheless maintain this appeal because of his official capacity.

Having in mind that the Attorney General did not appear on his own behalf or on behalf of the State as a party before the PSC or the District Court, we determine that his participation in the proceedings below and in the District Court must be limited to his representation of the PSC, through the special assistant attorneys general.

In that sense, therefore, the contention of the PSC that the Attorney General becomes the attorney for the PSC only upon request of the Commission, pursuant to section 69-3-110(3), MCA, is incorrect. Under the constitution and

- 15 -

by virtue of his office, it is the duty of the Attorney General to institute and prosecute all actions or proceedings necessary for the enforcement of the regulation of utilities, whether requested by the Commission or not. The Attorney General may, however, as he did in this case, authorize counsel employed by the Commission to act as special assistant attorneys general in the prosecution of court actions.

Moreover, the appearance of the Consumer Counsel in rate proceedings would not foreclose an appearance by the Attorney General on behalf of the State. The duties of the Consumer Counsel and of the Attorney General are not co-extensive.

While the Attorney General is the legal officer for the PSC in all cases to which the PSC is a party, the PSC remains the party in the action. The Attorney General remains the attorney, and as legal officer he is not empowered to make the decisions that are vested by law in the discretion of the PSC. The power of the State to make regulatory decisions on utility rates is lodged in the PSC and not the Attorney General. Rightly or wrongly, it is the PSC, within the bounds of law that must regulate rates. The PSC is not answerable for the lawful exercise of its discretion to a fellow official, the Attorney General. The substantive discretion as to what rates to deny or promulgate is only the PSC's under the provisions of law. The Attorney General, like the rest of us, must accept the PSC decision. He is not free, because the result differs from what he would prefer, to upset the lawful decisions of a public officer in the guise of his attorney relationship to that officer. To permit otherwise would make the Attorney General a super-officer, whose discretion on any state subject could

override that of other public officers, by testing his discretion against theirs in court. No more disruptive arrangement for the operation of the government can be imagined. The forum for testing the correctness of the PSC decision not to appeal the adverse decision of the District Court is not to test for the first time such decision in the appellate court in the guise of an appeal, but rather in the forums provided by law, the proceedings before the PSC and before the District Court on review.

The position of the Attorney General in this case is untenable. As a nonparticipant in the proceedings before the PSC and the District Court, he is not entitled to appeal either on behalf of the State or his own behalf. This appeal is not the place to contest the ultimate decision of the PSC not to appeal. For these further reasons, therefore, the attempted appeal by the Attorney General, whether on his official behalf or on behalf of the State of Montana must be dismissed.

VI.

We also determine in this case that the appeal of the PSC in this case must be dismissed as untimely.

More than sixty days from the entry of judgment by the District Court had elapsed when the PSC filed its notice of appeal under Rule 5, M.R.App.Civ.P. Since the Attorney General had filed a notice of appeal on behalf of the State of Montana, the PSC, to protect its interest in this cause, filed its notice of appeal within the seven days provided under Rule 5.

The right of a party to file a notice of appeal within seven days after the first notice of appeal is filed by another party is conditioned upon the language of Rule 5,

which is "If a timely notice of appeal is filed by a party . . ." Because we have determined that the appeal filed by the Attorney General on the 60th day from the notice of entry of judgment was invalid as an attempted appeal, the right of any other party whose right to appeal depends on that attempted appeal is without basis. The appeal of the PSC must therefore be dismissed as untimely.

VII.

Accordingly, it is ordered that the appeals of the State of Montana, through the Attorney General and of the PSC be and are hereby dismissed. It follows that all pending motions in this appeal are likewise denied.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice Frank B. Morrison, Jr. dissents as follows:

I disagree with the result reached by the majority opinion although I believe it to be a well reasoned and well documented discussion of law. I particularly commend the majority for recognizing that the Attorney General is legal counsel for the PSC. In light of § 69-14-132, MCA, that can hardly be denied. The section states:

> Legal assistance for commission. The attorney general is the attorney of the commission, and the county attorney of every county in the state shall, on the request and at the direction of the attorney general assist in all cases, proceedings, and investigations undertaken by the commission under this chapter in his own county.

I also specifically agree with the following from the majority opinion:

> While the Attorney General is the legal officer for the PSC in all cases to which the PSC is a party, the PSC remains the party in the action. The Attorney General remains the attorney, and as a legal officer he is not empowered to make the decisions that are vested by law in the discretion of the PSC.

The PSC is the party and the Attorney General is the lawyer.

I disagree with the majority in the result. The Attorney General, who was a lawful attorney for the PSC, filed a notice of appeal on behalf of the State. For purposes of litigation "State" means the State of Montana or any office, department, agency, authority, commission, board, institution, hospital, college, university or other instrumentality thereof. Section 2-9-101(7). The State when referring to the State of Montana includes the PSC and when the Attorney General appealed in behalf of the State he did in fact appeal for the PSC which he does, by law, represent as counsel.

19

I do take issue with the statement in the majority opinion that:

> In this case, the PSC, as a state agency involved in the District Court action, has acted to accept the decision of the District Court and to forego an appeal.

Perhaps such a decision was made and perhaps such a result may have been reported in the news media. I do not believe that such a decision is part of the record in this case.

I have carefully examined the record and the pleadings filed by the parties. I find that there is a valid notice of appeal filed by the Attorney General for the State of Montana which includes the PSC. There is no indication in the record that the Attorney General was acting outside of his authority. In fact the Attorney General is a lawful agent for the PSC and his action in filing the notice of appeal is ratified by the PSC's failure to repudiate that act. See Restatement (Second) of Agency § 94 (1957).

The statutes referred to in both the majority opinion and this dissent show that the Attorney General is an attorney for the PSC, and he appealed on behalf of the PSC which he lawfully represented. If the PSC wished to repudiate the action of the Attorney General it had only to move to dismiss the notice of appeal as being filed without its authority. Having failed to do so the PSC acquiesced in the action of its attorney and, in my view, the appeal must go foreword.

I would not reach the broader question of whether the Attorney General can appeal on behalf of the people of this State where the PSC and the Department of Public Service Regulation were the only parties named as litigants in the judicial review proceeding from which this appeal emanated.

20

The only issue before us is whether to dismiss the notice of appeal which has been filed. That notice of appeal is not void and the motion to dismiss should be overruled without reaching the broader question.

The majority opinion engages technical construction to prevent an appeal. Abundant legal authority supports the proposition that a liberal construction should be engaged in order to assure that litigation is heard on its merits and not disposed of on a technical basis. See 4 Am.Jur.2d 538, Appeal and Error, §7.

2 Moore's Federal Practice § 1.13 provides:

The objective of the Rules has been variously phrased: (1) "Decisions are to be on the merits and not on procedural niceties"; (2) "to secure a disposition of litigation on the merits rather than by collateral methods"; (3) ". . . to avoid surprises and to promote justice"; . . .; (5) "to avoid a strict technical interpretation which might work a hardship on the litigants"; . . . However worded, liberality is the canon of construction.

The spirit of this Rule was affirmed by this Court in Tefft v. Tefft (Mont. 1981), 628 P.2d 1094, 1097, 38 St.Rep 837, wherein we said:

This holding is in keeping with the philosophy of modern appellate practice that technical defects of procedure should not bar a party from access to the courts.

The majority opinion seeks to buttress its technical approach with the assertion that there is no aggrieved party in this case. The reason for an aggrieved party is to assure that each side will be spiritedly represented and through the clash of advocacy the court can distill justice.

The PSC is certainly an aggrieved party which sought judicial review. If in fact the PSC did make a determination not to appeal they must have done so to avoid risk of this Court affirming the District Court action. In other words a decision not to appeal, if indeed one was made, would surely

21

have involved a compromise settlement. I have no doubt that the PSC, if they are in court through the notice of appeal filed by the Attorney General, can vigorously defend the commission's original decision.

The PSC, in seeking judicial review and in appealing to this Court, represents the rate payers of Montana. Those rate payers have an interest in seeing that this case be decided on its merits in the Supreme Court. I feel that the majority opinion employs an unduly restrictive and narrow interpretation of the Rules which results in the rate payers being denied Court access.

There is a valid notice of appeal on file and the PSC should be directed to go forward or, in the alternative, to dismiss the appeal filed by its lawyer, the Attorney General of Montana.

Justice

22

Mr. Justice William E. Hunt, Sr., dissenting:

Montana Power's motion to dismiss the appeal filed by the Attorney General on behalf of the State of Montana has been granted by the majority because the State was never a party of record in the administrative proceedings before the Commission nor the proceedings before the District Court. "Utter stranger" is the phrase used by the Power Company to describe their view of the status of Montana and its Attorney General trying to bring the case before this Court. The long and turbulent history of rate setting in this state, makes that phrase utter nonsense. One need only read the proceedings of the 1972 Constitutional convention to find the interest of the members and the citizens in rate matters. Montana Constitutional Convention verbatim transcript pp. 2373-2423, Vol. VI (1981).

That interest carries over to the present case. An agency of the State of Montana, the Public Service Commission, held extensive hearings on this matter. As experts in rate setting they reached a decision adverse to the Power Company. The utility appealed the District Court that reversed their decision. Parties named in the proceedings before the Commission and the District Court elected not to appeal for reasons of their own. The Attorney General in his capacity as the top-elected attorney for the state correctly filed an appeal that should be granted.

Under State ex rel. Olsen v. Public Service Commission (1955), 129 Mont. 106, 283 P.2d 594, the Attorney General not only has the power but in my opinion has the duty to maintain an action such as this on appeal. In Olsen, the Court quoted with approval from 5 Am.Jur. Attorney General § 6 (1936):

> Moreover, it is generally held that the attorney general, in addition to the powers and duties conferred and imposed upon him by statute, is clothed and charged with all the common-law powers and duties pertaining to his office as well, except in so far as they have been expressly restricted. The duties of the office are so numerous and varied that it has not been the policy of state legislatures to attempt specifically to enumerate them; and it cannot be presumed, therefore, in the absence of an express inhibition, that the attorney general has not such authority as pertained to his office at common law. Accordingly, as the chief law officer of the state, he may, in the absence of some express legislative restriction to the contrary, exercise all such power and authority as public interests may from time to time, require, and may institute, conduct, and maintain all such suits and proceedings as he deems necessary for the enforcement of the laws of the state, the preservation of order, and the protection of public rights.

129 Mont. at 114-15, 283 P.2d at 598-99; see 7 Am.Jur.2d Attorney General § 9 (1980). It later stated, citing 5 Am.Jur. Attorney General § 8, that "'[o]bviously there can be no dispute as to the right of an attorney general to represent the state in all litigation of a public character. The attorney general represents the public and may bring all proper suits to protect its rights.'..." 129 Mont. at 115, 283 P.2d at 599; see 7 Am.Jur.2d Attorney General § 14. Addressing the issue of whether the district court proceeding affected "the public interests or . . . had for its purpose the protection of public rights," The Court concluded that an action "questioning the reasonableness and lawfulness of the [telephone] rate" did involve the public interest. 129 Mont. at 116, 283 P.2d at 599. "Hence public interest being affected the state is a party in interest and the attorney general under the broad powers given him by the common law may represent the state in litigation." 129 Mont. at 117, 283 P.2d at 600.

The Attorney General should be allowed to maintain the appeal and this Court should deny the motion to dismiss and the case should be heard in interest of the State of Montana represented by the Attorney General.

_William E. Smith_
Justice