No. 93-351

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

      Plaintiff and Respondent,

-vs-

ROBERT DEAN ROGERS,

      Defendant and Appellant.

FILED

OCT 25 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        William M. Brooke; Moore, O'Connell & Refling,
        Bozeman, Montana

    For Respondent:

        Hon. Joseph P. Mazurek, Attorney General, Carol
        Schmidt, Assistant Attorney General, Helena, Montana

        Mike Salvagni, Gallatin County Attorney, Bozeman,
        Montana

Submitted on Briefs:  June 23, 1994

Decided:  October 25, 1994

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Robert Dean Rogers (Rogers) appeals from an order of the Eighteenth Judicial District Court, Gallatin County, granting the State of Montana's Motion to Dismiss Appeal. We reverse.

Rogers was charged in Gallatin County Justice Court with the misdemeanor offenses of assault and resisting arrest pursuant to §§ 45-5-201 and 45-7-301, MCA, respectively. He ultimately entered guilty pleas to both charges and was sentenced to six months in jail, suspended on conditions including that he obey all laws.

Rogers subsequently was arrested and charged with driving under the influence, driving without liability insurance in effect, and driving without a valid driver's license. On the basis of those charges, the State of Montana (State) filed a Petition to Revoke Suspended Sentence in the Justice Court. A revocation hearing was scheduled for, and held on, October 30, 1992. The Justice Court Minutes reflect that the State presented evidence via three witnesses; Rogers presented no evidence. The Justice Court found that Rogers had violated the conditions of his suspended sentence. The court again suspended his sentence, adding additional conditions to those originally imposed.

Rogers appealed to the District Court for a trial de novo on the petition for revocation of his suspended sentence. The State moved to dismiss the appeal, arguing that no appeal is available pursuant to § 46-17-311, MCA, because a suspended sentence revocation is an administrative, rather than a criminal, proceeding. Rogers responded that a broader reading of the statute

2

and several Montana Supreme Court cases was appropriate and necessary in order to provide for an appeal de novo under these circumstances. Following a hearing, the District Court granted the State's motion. Rogers timely filed his notice of appeal to this Court.

In granting the State's motion to dismiss Rogers' appeal, the District Court determined that a revocation is an administrative proceeding rather than a criminal adjudication. Thus, the court reasoned, the revocation of a suspended sentence is not a judgment from which an appeal de novo may be taken pursuant to § 46-17-311, MCA.

The procedures to be followed in a proceeding for revocation of a suspended sentence are set forth in § 46-18-203, MCA. It is clear from that statute that a revocation proceeding is not equivalent to a criminal trial: only a hearing, rather than a trial, is required; the prosecution's burden of proof is only a preponderance of the evidence; and the issue is not one of guilt or innocence, but is whether the person has violated a condition of a suspended sentence. Section 46-18-203, MCA. Our cases recognize these basic differences between revocation proceedings and criminal trials. See, e.g., State v. Watts (1986), 221 Mont. 104, 717 P.2d 24; State v. Robinson (1980), 190 Mont. 145, 619 P.2d 813; State v. Oppelt (1979), 184 Mont. 48, 601 P.2d 394; State v. Ryan (1975), 166 Mont. 419, 533 P.2d 1076. The cases do not, however, characterize revocation proceedings as "administrative" hearings, as the State argues and the District Court concluded.

3

Section 46-17-311, MCA, provides for appeals from justices' and city courts to district courts, and requires trial de novo in the district courts. Located as it is in the Criminal Procedure Title of the Montana Code Annotated, the statute can be construed as providing for appeals only in criminal matters. This interpretation is further clarified by the language contained in § 46-17-311(2), MCA, which requires written notice of intention to appeal within 10 days "after a judgment is rendered following trial." As discussed above, a revocation hearing is not a criminal trial.

Moreover, as the State points out, a "judgment"--as the term is used in § 46-17-311(2), MCA--includes an adjudication of whether a defendant is guilty or not guilty and, if guilty, the pronouncement of sentence. See § 46-1-202(10), MCA. Here, while the multi-purpose form utilized by the Justice Court indicates that the court "found defendant guilty" of violating the conditions of his suspended sentence, § 46-18-203, MCA, does not speak to "guilt" or "innocence" in the context of revocation hearings. Rather, it simply requires the court to determine whether or not the prosecution has proved a violation of the conditions of the suspended sentence by a preponderance of the evidence. Section 46-18-203(6)-(8), MCA. Thus, a straightforward reading of § 46-17-311, MCA, and our cases, appears to support the District Court's conclusion that an appeal de novo is not available here.

The problem with that conclusion, however, is that it forecloses any appeal to, or review by, any court from a justice

4

court's revocation of a suspended sentence. Nor does the conclusion take the legislature's intent into account. Appeals for de novo proceedings in district courts are statutorily provided for in criminal and civil matters pursuant to § 46-17-311 and Title 25, Chapter 33, MCA, respectively. We conclude that, taken together, these statutes reflect the legislature's intent to provide for appeals de novo to the district courts from all final justice court proceedings.

The only remaining question, then, is whether the legislature intended appeals de novo from justice court revocations of suspended sentences to be governed by § 46-18-203, MCA, or Chapter 33 of Title 25 of the Montana Code Annotated. The legislature placed § 46-18-203, MCA, governing revocation proceedings in the Criminal Procedure Title of the Montana Code Annotated. It included in that statute the following provisions which are substantially similar to those relating to criminal trials:

1. An arrest warrant may be issued upon the filing of a petition to revoke a suspended sentence;

2. Statutes relating to bail are applicable;

3. The "defendant" must be advised of, and provided, many of the same rights as in criminal proceedings, including the right to court-appointed counsel in the event counsel cannot be afforded; and

4. Jail time may result. Section 46-18-203, MCA.

Furthermore, we have recognized that revocation proceedings are matters over which the original sentencing court in a criminal

5

case "retains jurisdiction." Oppelt, 601 P.2d at 397. Thus, revocations are a postconviction continuation of criminal cases. Indeed, it is clear that a criminal defendant whose sentence has been suspended has a liberty interest in retaining the suspended nature of his or her sentence, and faces the possibility of a loss of that liberty via a revocation proceeding in justice court. We have specifically recognized that a liberty interest is at stake in revocation proceedings. See, Robinson, 619 P.2d at 814-15.

Based on these cogent and numerous similarities between criminal and revocation proceedings, we hold that appeals de novo from justice court revocations of suspended sentences are available under, and governed by, § 46-17-311, MCA. In this regard, however, the § 46-17-311(1), MCA, language that appeals from justice court to district court "may be tried before a jury . . . " clearly is inapplicable to the appeals at issue herein because the issue of whether a suspended sentence will be revoked is not subject to trial by jury initially in the justice court. We conclude by observing that nothing in this opinion impacts on our prior cases distinguishing, for purposes of the issues presented therein, between revocation proceedings and criminal adjudications.

Reversed and remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

6

_John Conway Harrison_

_William E. Hunt Sr._

_____
_____
_____
Justices

Justice Terry N. Trieweiler specially concurring.

I concur with the result of the majority opinion. However, I do not agree with all that is said in that opinion.

Specifically, I disagree with the majority's and the dissent's conclusions that "a straightforward reading of § 46-17-311, MCA, and our cases, appears to support the District Court's conclusion that an appeal de novo is not available here."

A straightforward reading of § 46-17-311, MCA, compels the conclusion that an appeal *de novo* is permitted under the circumstances in this case.

Section 46-17-311(2), MCA, provides in relevant part that "[t]he defendant may appeal to the district court by filing written notice of intention to appeal within 10 days after a <u>judgment</u> is rendered following <u>trial</u>." (Emphasis added.)  Trial is defined in Black's Law Dictionary as:

> A judicial examination, in accordance with law of the land, of a cause, either civil or criminal, of the issues between the parties, whether of law or fact, before a court that has jurisdiction over it.  For purpose of determining such issue.
>
> It includes all proceedings from time when issue is joined, or, more usually, when parties are called to try their case in court, to time of its final determination.

Black's Law Dictionary 1657 (Rev. 4th ed. 1976) (citations omitted).

The defendant's revocation hearing was a judicial proceeding at which evidence was presented, witnesses were called and cross-examined, and factual issues were resolved by the Justice Court. While it may not have been a "criminal adjudication" for the

8

purpose of requiring the constitutional guarantees considered in our previous cases, *see State v. Ryan* (1975), 166 Mont. 419, 533 P.2d 1076; *State v. Oppelt* (1979), 184 Mont. 48, 601 P.2d 394; *State v. Robinson* (1980), 190 Mont. 145, 619 P.2d 813, it was, nevertheless, a trial as that term is commonly understood in Anglo-American jurisprudence.

There is nothing really complicated or elusive about defining the term "trial." Most first-year law students could recite that a trial is an adversary proceeding at which evidence is presented, and as a result of which, factual or legal issues are resolved. Defining the term only becomes complicated when someone insists, as the dissent does, on arriving at the word's meaning by patching together the quilt work of result-oriented decisions in which this Court has created a subspecies of "trial" known as the "criminal trial" or "criminal adjudication" for the purpose of avoiding at a revocation hearing the constitutional protections that apply to the initial determination of a defendant's guilt. However, those cases have no application here. We are not asked in this case to decide whether this revocation was a "criminal adjudication" for the purpose of applying due process, double jeopardy, or any other constitutional guarantee. We are simply asked in this case whether this adversary proceeding at which evidence was taken and factual issues were resolved was a "trial" within the meaning of our statute which authorizes appeals from decisions of the justice court. Sometimes by trying too hard, we overlook the obvious.

9

Similarly, when the District Court amended defendant's previously imposed sentence, the District Court amended its judgment, and thereby entered a new judgment. A judgment is commonly understood to be "[t]he official and authentic decision of a court of justice upon the respective rights and claims of the parties to an action or suit therein litigated and submitted to its determination." Black's Law Dictionary 977 (Rev. 4th ed. 1976) (citations omitted).

While the statutory definition of "judgment" refers to an adjudication of guilt or innocence, that same statutory definition includes the sentence pronounced by the court. Section 46-1-201(10), MCA. Therefore, any amendment to that sentence is no less an amendment to the court's judgment, and defendant's right to appeal from the amendment is no less important than his right to appeal from the original judgment. To hold that there is a statutory right to appeal from judgments entered in justice court, but not from amendments to a judgment entered in justice court simply because the Legislature did not spell that fact out, exalts form over substance and would frustrate the purpose for which appeals from justice court judgments are allowed.

Therefore, I too would reverse the judgment of the District Court and allow defendant to proceed with his appeal from Justice Court to District Court. However, for the above reasons, I do not agree with all that is said in the majority opinion.

Justice

10

Justice James C. Nelson, dissenting.

I respectfully dissent from the Court's opinion in this case.
We conclude that ". . . a straightforward reading of § 46-17-311,
MCA, and our cases, appears to support the District Court's
conclusion that an appeal de novo is not available here." I agree,
and that, necessarily, is where our inquiry in this case must end.

Dissatisfied with the obvious, however, we then step through
the looking glass and conclude that "taken together . . . [§ 46-17-
311 and Title 25, chapter 33, MCA] reflect the legislature's intent
to provide for appeals de novo to the district courts from all
final justice court proceedings." Exactly where that intent is
reflected in the otherwise clear and unambiguous statutory scheme
at issue, is not evident in our opinion -- most likely because the
legislature's expressed intent is quite the opposite. I submit
that justifying our decision here on the basis of the legislature's
"intent" merely stands as our testament to the way we wished the
law was, rather than a forthright interpretation of what the law
actually is.

I begin with the rules of statutory construction so oft
repeated by this Court, and most recently so well summarized in our
decision in the consolidated cases of Curtis v. District Court and
Vilensky v. District Court, (August 30, 1994), ___ Mont. ___, ___
P.2d ___, 51 St. Rep. 776. There, we stated:

> Our role in construing statutes is clear. We must
> "ascertain and declare what is in terms or in substance
> contained therein...;" we may not insert what has been
> omitted or omit what has been inserted. Section 1-2-101,
> MCA. The intention of the legislature is to be pursued.

11

Section 1-2-102, MCA. <u>If that intention can be determined from the plain meaning of the words used, a court may not go further and apply other means of interpretation.</u> (Citation omitted.) Where the statutory language is "plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the court to construe." (Citation omitted.) (Emphasis added.)

<u>Curtis & Vilensky</u>, 51 St. Rep. at 778.

There is no uncertainty or ambiguity in § 46-17-311, MCA, that requires us to divine legislative intent; the statute is clear and direct. The legislature has plainly expressed its intent in the clearest language and has provided for appeals, by trial <u>de novo</u>, from the courts of limited jurisdiction to the district courts only "after a judgment is rendered following trial." Section 46-17-311(2), MCA. A "judgment" is statutorily defined as the adjudication of guilt or innocence and includes the pronouncement of sentence. Section 46-1-202(10), MCA.

It is undisputed -- and our opinion acknowledges the fact -- that a probation revocation hearing is <u>not</u> a "trial" and a revocation of probation following a hearing is <u>not</u> a "judgment." There is absolutely no language in either § 46-17-311, MCA, or § 46-18-203, MCA, by which the legislature has either explicitly or implicitly statutorily provided for the right of appeal <u>de novo</u> to the district court from a probation revocation by a court of limited jurisdiction. The legislature has, to the contrary, clearly limited, by statute, the right of appeal from courts of limited jurisdiction to the district courts in criminal proceedings, to those proceedings involving the adjudication of guilt or innocence and pronouncement of sentence following a trial.

12

Our cases are legion. The right of appeal exists only by statute or rule. McClurg v. Flathead County Com'rs (1978), 179 Mont. 518, 519, 587 P.2d 415, 416. Appeal is a creature of and exists only by statute, and without supporting statutes, there is no appeal. Matter of Sage Creek Drainage Area (1988), 234 Mont. 243, 248, 763 P.2d 644, 647; State v. District Court (1955), 128 Mont. 538, 544, 279 P.2d 691, 694. The right of appeal is purely statutory. Matter of Sage Creek Drainage Area, 763 P.2d at 647; Sheridan County Electric Co-op v. Anhalt (1953), 127 Mont. 71, 74, 257 P.2d 889, 890; Corcoran v. Fousek (1951), 125 Mont. 223, 224, 233 P.2d 1040, 1041. (Emphasis added.)

In State v. Hartford (1987), 228 Mont. 254, 256, 741 P.2d 1337, 1338, we stated:

> Compliance with the statute is required to perfect an appeal from a Justice Court to the District Court because an appeal is exclusively a statutory right. State v. Province (Mont. 1987), [226 Mont. 425,] 735 P.2d 1128, 44 St. Rep. 775, 776; State v. Mortenson (1978), 175 Mont. 403, 574 P.2d 581. (Emphasis added.)

Moreover, statutes relating to appeals are mandatory and jurisdictional and prohibitory and jurisdictional in that they limit the right of appeal to the method expressly provided by statute. Montana Power Co. v. Dept. of Public Serv. Reg. (1985), 218 Mont. 471, 479, 709 P.2d 995, 999; State v. District Court of the Tenth Judicial District (1955), 128 Mont. 526, 528, 278 P.2d 1000, 1001; In re Malick's Estate (1951), 124 Mont. 585, 589, 228 P.2d 963, 965.

In this case, there is no statute; there is no rule; there is no procedure by which a defendant can appeal a probation revocation

13

by a court of limited jurisdiction to the district court and receive a trial _de novo_ with respect to the grounds for revocation. That we have now judicially created such a right from whole cloth does not give jurisdiction to the district courts to entertain such an appeal. That right of appeal can be created and that jurisdiction granted only by statute or rule.

Finally, I do not agree with the reasoning of Justice Trieweiler's special concurrence that, contrary to our opinion, a probation revocation proceeding _is_ a trial. This Court has heretofore defined the word "trial" in the context of criminal cases:

> The word "trial," when used in connection with criminal proceedings, means proceedings in open court, after the pleadings are finished and it is otherwise ready, down to and including the rendition of the verdict.

State v. Spotted Hawk (1899), 22 Mont. 33, 45, 55 P. 1026, 1028. _See_, also, State v. Koch (1906), 33 Mont. 490, 496, 85 P. 272, 274; State v. Reed (1922), 65 Mont. 51, 56, 210 P. 756, 757; State v. Test (1922), 65 Mont. 134, 137, 211 P. 217, 218; Rosebud County v. Flinn (1940), 109 Mont. 537, 541, 98 P.2d 330, 333, in accord.

A "verdict" is:

> The formal decision or finding made by a jury, impaneled and sworn for the trial of a cause, and reported to the court (and accepted by it), upon the matters or questions duly submitted to them upon the trial. The definitive answer given by the jury to the court concerning the matters of fact committed to the jury for their deliberation and determination.

Black's Law Dictionary, (5th ed. 1979), at 1398. (Citation omitted.)

Whatever might the "commonly understood [definition of a

14

criminal trial] in Anglo-American jurisprudence," that is clearly not how this Court has defined the term and how that term is commonly understood in Montana. The "trial" portion of a criminal case ends with the determination of the defendant's guilt or innocence by the finder of fact and the pronouncement of sentence. Spotted Hawk, 55 P. at 1028; §§ 46-17-311(2), MCA and 46-1-202(10), MCA. See also, generally, Title 46, Chapters 16 and 17, MCA.

Despite our best attempts to justify the unjustifiable, the long and short of it is that, we have plainly usurped the prerogative and function of the legislature to statutorily create and define the parameters of and procedures governing appeals from courts of limited jurisdiction to the district courts. Whether there should be a right of appeal under the circumstances of this case and, if so, what procedures should control the exercise of that right is not the issue here. That is for the legislature to decide, not this Court.

The plain language of § 46-17-311, MCA, does support the District Court's conclusion; the court was correct; its decision should be affirmed. Accordingly, I respectfully dissent.

_____
Justice

Justice Fred J. Weber concurs in the foregoing dissent.

_____
Justice

15