No. 00-535

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 313

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JOACHIM KEMPIN,

Defendant and Appellant.

APPEAL FROM: District Court of the Sixteenth Judicial District,

In and for the County of Powder River,

Honorable Gary L. Day, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Mark McLaverty, Mansch, McLaverty and Becarri, PLLP,

Missoula, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Micheal S. Wellenstein,

Assistant Attorney General, Helena, Montana

Jeffrey A. Noble, County Attorney, Broadus, Montana

Submitted on Briefs: May 17, 2001
Decided: December 31, 2001

Filed:

_____

Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Following Defendant Joachim Kempin's failure to appear before the Justice Court in Powder River County, Montana, the appearance bonds he had posted on seven charges alleging violations of Montana fish and game laws were forfeited by the Justice Court. The court also suspended Kempin's hunting, fishing and trapping privileges for ten years. Kempin appealed to the Sixteenth Judicial District Court, which dismissed the appeal for lack of jurisdiction. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Alerted by a concerned neighbor, State game wardens investigated alleged hunting violations at a Powder River County ranch owned by Washington resident Joachim Kempin. Cited on five separate counts in late October, 1999, Kempin received Notices to Appear and Complaints (Notices) in Powder River County Justice Court on the following charges: killing two antelope without a license, under § 87-2-103(1)(c), MCA; two counts of illegally using the hunting permit of another, under § 87-2-110, MCA; and one count of harassing an antelope with a vehicle, under § 87-3-125(2), MCA. Two days later, Kempin was issued two additional Notices for killing a mule deer without a license, under § 87-2-103(1)(c), MCA, and, again, using a hunting tag belonging to another. The Notices set the bond amounts for each offense, and separately listed restitution amounts to the State of Montana for each of the three illegally taken game animals. Six of the seven citations noted the violation exposed Kempin to forfeiture of hunting privileges.

¶3 The Notices directed Kempin to appear in Justice Court in Broadus, Montana, on or before December 6, 1999. On that day, Justice of the Peace Peggy D. Jones received a telephone call from Mark McLaverty, counsel retained by Kempin. McLaverty requested a continuance to give his client additional time to get the bond money to the court. Judge

Jones granted the request and reset the appearance date for December 10, 1999. When Kempin did not appear or post bond by that date, the court issued warrants for Kempin's arrest. On December 22, 1999, Kempin's local ranch manager, Peter Maul, who had been charged with similar offenses, delivered Kempin's bonds and restitution penalties to the court, with a note that read:

> Fri. Dec. 17, 1999
>
> Judge Jones,
>
> Thank you for your patience, and our apologies for requiring it.
>
> Enclosed $4400.-- for hunting violations.
>
> With regrets and apologies --
>
> Joachim Kempin & Peter Maul

The amount transmitted to the Justice Court was not only sufficient to post Kempin's bonds for the offenses, but also to pay the amounts required for restitution.[1] Upon receipt of the funds, Judge Jones recalled and dismissed the arrest warrants. On January 4, 2000, the court forfeited the seven bonds, and notified Kempin and his attorney that Kempin's Montana hunting, fishing and trapping privileges had been suspended for ten years.

¶4 Kempin filed a notice of appeal to District Court. The Powder River County Attorney moved to dismiss the appeal for lack of jurisdiction. As a back-up measure, the County Attorney filed a separate criminal complaint against Kempin that encompassed the seven hunting violations. Kempin appeared at the arraignment in District Court on February 2, 2000, and entered a plea of not guilty.

¶5 Counsel McLaverty represented Kempin at the District Court hearing on the motion to dismiss the appeal on May 10, 2000. Judge Jones testified that at no time did Kempin or McLaverty appear before the Justice of the Peace, request a second continuance or indicate a desire to enter a plea. Judge Jones told the court that on December 6, 1999, when McLaverty called the Justice Court to request a continuance for Kempin's appearance date, McLaverty informed her that Kempin wished to post and then forfeit the bonds for all seven violations. Judge Jones recalled that during this same conversation she

discussed the fact that Kempin stood to lose his hunting, fishing and trapping privileges as a result of the violations. McLaverty testified that he did talk to Judge Jones about possible loss of privileges, and about forfeiting the bonds, but that he did not believe he had made a statement indicating Kempin's intention to forfeit the bonds. The District Court found Judge Jones' testimony to be credible and dismissed the appeal, concluding that Kempin had no statutory right to appeal the forfeitures as a matter of law.

¶6 The issue before this Court is whether the District Court erred in dismissing Kempin's appeal of the forfeiture of his bonds by Justice Court for lack of jurisdiction.

## STANDARD OF REVIEW

¶7 The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. *State v. Ward* (1994), 266 Mont. 424, 426, 880 P.2d 1343, 1345; *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

## DISCUSSION

¶8 The Montana Constitution states the district courts "shall hear appeals from inferior courts as trials anew unless otherwise provided by law." Art. VII, Sec. 4, Mont. Const. This Court has stated repeatedly that appeal of a criminal conviction from a court of limited jurisdiction is governed by statute. *State v. Feight*, 2001 MT 205, ¶ 11, 306 Mont. 312, ¶ 11, ___ P.3d ___, ¶ 11 (citing *State v. Barker* (1993), 260 Mont. 85, 91, 858 P.2d 360, 363; *Ward*, 266 Mont. at 427, 880 P.2d at 1345; *State v. Todd* (1993), 262 Mont. 108, 113, 863 P.2d 423, 426). Statutes relating to appeals are mandatory and jurisdictional, and, in a sense, prohibitory and jurisdictional in that they limit the right of appeal to the method expressly provided by statute. *Feight*, ¶ 14 (citing *Montana Power Co. v. Montana Dept. of Pub. Serv. Regulation* (1985), 218 Mont. 471, 479, 709 P.2d 995, 999).

¶9 Section 46-17-311, MCA, provides the exclusive statutory remedy for appeals from the courts of limited jurisdiction. *Feight*, ¶ 15. The statute outlines three circumstances under which a criminal defendant may appeal to the district court for a trial *de novo*: 1) when a defendant pleads guilty or *nolo contendre* but preserves legal issues raised by pretrial motion for appeal; 2) when a defendant files "written notice of intention to appeal within 10 days after a judgment is rendered following trial"; and, 3) when a defendant appeals revocation of a suspended sentence. Section 46-17-311(1), (2) and (4), MCA. Here,

Kempin raised no appealable pre-trial issues and revocation of a suspended sentence bears no relevance. Kempin appeals the District Court's interpretation of the second statutory basis for appeal.

¶10 Kempin asserts he perfected his appeal to District Court when he filed a notice of intent to appeal within 10 days of judgment. Kempin claims the language of § 46-17-311 (2), MCA, allowing an appeal "following trial," does not explicitly exclude an appeal following forfeiture. Therefore, Kempin reasons, an appeal is not proscribed. In the alternative, Kempin asserts § 46-17-311(2), MCA, is unconstitutionally vague. The State counters that an appeal to district court is only available "after judgment is rendered following trial" and no justice court trial occurred in Kempin's case.

¶11 This Court has consistently held that strict compliance with § 46-17-311, MCA, is necessary to perfect an appeal. *Ward*, 266 Mont. at 427, 880 P.2d at 1345; *State v. Speith* (1990), 244 Mont. 392, 394, 797 P.2d. 221, 222. The appeal to district court for a trial *de novo* "after a judgment is rendered following trial" in a court of limited jurisdiction connotes that issues of fact and law litigated at the lower level then will be re-adjudicated on appeal. The statutory basis for an appeal following trial, outlined by § 46-17-311(2), MCA, is consistent with the constitutional requirement of a trial "anew" on appeal, which presupposes a prior trial.

¶12 The judgment rendered in Kempin's case followed a forfeiture of bonds posted to secure Kempin's appearance in justice court. Bond forfeiture serves the same procedural role as a conviction under Montana's wildlife management laws, as provided in the sentencing statute at issue here:

> [A] person, *upon conviction or forfeiture of bond or bail*, shall forfeit any current hunting, fishing or trapping license issued by this state and the privilege to hunt, fish or trap in this state for 24 months from the date of *conviction or forfeiture*, unless the court imposes a longer forfeiture period. For each *conviction or forfeiture*, the department shall notify the person of the loss of privileges. [Emphasis added. ]

Section 87-1-102(2)(b), MCA.

¶13 The District Court found Kempin's counsel informed the court that Kempin intended to forfeit the bonds posted to secure his appearance before the Justice of the Peace. The post-forfeiture judgment included no jail time, and Kempin's fines were limited to the

amount of the bonds and the restitution Kempin paid to the State of Montana for the three slain game animals. Upon forfeiture, the court suspended Kempin's hunting privileges for a set period of time and notified both Kempin and his attorney, as required by § 87-1-102 (2)(b), MCA.

¶14 At the hearing on the motion to dismiss Kempin's appeal, the District Court correctly explained that if a defendant is automatically entitled to a trial *de novo* on appeal without first having a justice court trial, a defendant could avoid justice court altogether. By not appearing, and forfeiting the justice court bonds, a defendant could then pursue a trial in district court and render the justice court system meaningless.

¶15 We are directed to give meaning to the laws we are asked to interpret and "not insert what has been omitted or omit what has been inserted." Section 1-2-101, MCA. The Constitution provides for appeals from courts of limited jurisdiction to district courts "as trials anew unless otherwise provided by law." Art. VII, Sec. 4, Mont. Const. Montana law provides the procedure for perfecting an appeal from a court of limited jurisdiction to district court "after a judgment is rendered following trial." Section 46-17-311(2), MCA. We read the plain language of the statute to first require a trial in the inferior court before an appeal can be perfected, except for the specific statutory exceptions thereto. We conclude § 46-17-311(2), MCA, is not unconstitutionally vague. The statute sets forth a logical procedure that assures a new trial in district court after a defendant has exhausted all remedies in the courts of limited jurisdiction.

¶16 Kempin claims the Justice Court's forfeiture of his bond denied him the constitutional right to trial by jury, and the attendant rights to confront witnesses, present witnesses and evidence, receive notice of proceedings and have counsel. He also asserts that his right to due process was violated because forfeiture of his bonds and suspension of his hunting privileges were ordered without notice.

¶17 Kempin's jury trial arguments are not compelling under the facts of this case. He failed to appear in the Justice Court and assert any of his constitutional rights at either of the times scheduled by the Justice Court for him to do so. The right to trial by jury can be waived by default of appearance. Art. II, Sec. 26, Mont. Const. Further, Kempin's only direct contact with the Justice Court, made through his counsel, was to request that Judge Jones grant an extension of Kempin's appearance date so that the bond money could be paid into the court, and, as found by the District Court, that he desired to post and forfeit the bonds. Kempin posted his bond shortly thereafter, including payment of restitution,

and did not appear or otherwise request a hearing at any time. Judge Jones acted properly under these circumstances in not conducting either a jury or bench trial. Kempin waived his trial rights by failing to appear.

¶18 Neither do the facts support Kempin's due process claim. The District Court found that Judge Jones discussed the effect of bond forfeiture with Kempin's counsel when McLaverty notified the court of Kempin's intent to forfeit. Kempin also received notice that he risked loss of hunting, fishing and trapping privileges in Montana by the fact that six of the seven written Notices issued to him personally by the game wardens stated that his license privileges may be suspended. In light of Kempin's stated intention to forfeit the bonds and the advance notice provided to him of the suspension of his privileges, we cannot say that his due process rights were infringed.

¶19 We concur with the District Court's holding that no statutory basis exists for Kempin's appeal. The Justice Court lawfully forfeited Kempin's appearance bonds, which resulted in his convictions on the seven charged violations and consequent loss of privileges. Accordingly, we hold that the District Court did not err in dismissing Kempin's appeal for lack of jurisdiction.

¶20 Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

Justice Jim Regnier concurring.

¶21 I concur with the Court's conclusion that the District Court lacked jurisdiction to hear Kempin's appeal. However, I disagree with the rationale proffered by the Court to support its conclusion under the same rationale I expressed in my dissent in *Feight*.

¶22 The Court states that "[s]ection 46-17-311, MCA, provides the *exclusive* statutory remedy for appeals from the courts of limited jurisdiction." (Emphasis added.) I disagree. Section 3-5-303, MCA, provides that the district court has appellate jurisdiction in cases arising in justices' courts and other courts of limited jurisdiction in their respective districts as *may be prescribed by law* and consistent with the constitution, except as provided in § 46-17-203, MCA. The law prescribes in § 46-20-104(1), MCA, that an appeal may be taken by the defendant only from a final judgment of conviction and orders after judgment which affect the substantial rights of the defendant. Therefore, the proper inquiry is whether there are any specific statutory provisions which limit the defendant's general right of appeal provided in §§ 3-5-303 and 46-20-104(1), MCA.

¶23 Section 46-17-311(2), MCA, provides that "[t]he defendant may appeal to the district court by filing written notice of intention to appeal within 10 days after a judgment is rendered following trial." Significantly, the statute merely states that a defendant "may" file an appeal after judgment is rendered following trial. It does not say that a defendant *can only* appeal to the district court after a judgment is rendered following trial. Section 46-20-104(1), MCA, already provides for the defendant's right to appeal following a final judgment of conviction. Therefore, I believe § 46-17-311(2), MCA, simply outlines the procedure one must undertake to perfect an appeal following trial.

¶24 Here, pursuant to § 46-9-503(2), MCA, the Justice Court forfeited Kempin's bond because of Kempin's inaction, i.e., his failure to appear. Now, Kempin seeks the benefit of a trial anew in the District Court to circumvent the forfeiture because he does not like the suspension of hunting privileges imposed by the Justice Court.

¶25 In my opinion, a forfeiture of bond is equivalent to a plea of guilty or nolo contendere in the context of fish and game violations. Here, Kempin posted not only a sufficient amount to meet bond, but also sufficient monies to pay the prescribed restitution. Section 87-1-102(2)(b), MCA, provides that one who forfeits bond in turn forfeits his or her hunting, fishing or trapping privileges for a term set by the court. That is exactly what occurred here. Just as § 46-17-203(2), MCA, precludes a defendant from obtaining a trial anew following a guilty or nolo contendere plea, so should a defendant's concession of forfeiture preclude the windfall of a trial anew in district court. Kempin's remedy, if he was dissatisfied or surprised in the suspension of his hunting privileges, was to proceed under the statutory framework provided in § 46-9-503, MCA, and seek a discharge of his forfeiture. Therefore, while I disagree with the Court's justification, I concur with the result reached by the Court.

/S/ JIM REGNIER

Justice Patricia O. Cotter joins in the foregoing concurrence.

/S/ PATRICIA COTTER

Justice Terry N. Trieweiler dissenting.

¶26 I dissent from the majority opinion. Why mess around with secret military tribunals? Just bring the terrorists here. We can charge them and then sentence them and it doesn't matter what happens in between. There is no record in justice court. Justices of the peace do not have to be lawyers and, as long as there is no trial, there is no appeal. If we are serious about fighting terrorism, this process is fool proof. It avoids all the unpredictability and time consuming procedures that surely even secret military tribunals must occasionally experience.

¶27 Furthermore, if the majority is going to rely on statutory interpretation to the exclusion of reason and the Constitution, it ought to at least get statutory interpretation correct. There is nothing in § 46-17-311(2), MCA, nor anywhere else in the code that prohibits appeals from justice court unless there has been a trial. The plain language simply states that when there has been a trial and judgment, a notice of appeal has to be filed within ten days.

¶28 What is left unsaid by the majority is how this case is distinguishable from our prior decision in *State v. Rogers* (1994), 267 Mont. 190, 883 P.2d 115, and why this result doesn't fly in the face of Article II, Section 4, Mont. Const. What is left unsaid in the concurring opinion is how forfeiture of a defendant's bond without prior notice to the defendant is comparable to a guilty plea or plea of nolo contendere which can only be entered by an informed defendant after questioning to assure that the plea is voluntary.

¶29 In *State v. Rogers*, the majority summarily dispensed with the argument that § 46-17-311(2), MCA, permits appeals from justice courts only when there has been a trial. We held that:

> The problem with that conclusion, however, is that it forecloses any appeal to, or review by, any court from a justice court's revocation of a suspended sentence. Nor does the conclusion take the legislature's intent into account. Appeals for de novo

proceedings in district courts are statutorily provided for in criminal and civil matters pursuant to § 46-17-311 and Title 25, Chapter 33, MCA, respectively. We conclude that, taken together, these statutes reflect the legislature's intent to provide for appeals de novo to the district courts <u>from all final justice court proceedings.</u> [Emphasis added.]

*Rogers, 267 Mont. at 193, 883 P.2d at 117.*

¶30 When Kempin's bond was forfeited and judgment was entered against him, there was a "final justice court proceeding." The effect was no less than if he had been tried in the justice court. The problem is, according to Kempin, he did not have a chance to be tried in the justice court or enter a guilty plea because his bond was forfeited without prior notice.

¶31 The majority goes to great lengths to explain that Kempin's attorney told the justice of the peace that he wished to forfeit bond on all seven violations, that he failed to assert his constitutional rights at the time scheduled for doing so, and that he voluntarily waived his right to trial. Kempin denies all of these facts. However, what does it matter? According to the majority's interpretation of § 46-17-311(2), MCA, and its mantra about statutory interpretation, it would not matter if all of Kempin's allegations were true. In other words, it would not matter that he posted bond with the intention of defending himself but that he was denied the opportunity to defend himself because his bond was forfeited without notice and he was never given an opportunity to appear and deny guilt. According to the majority, if the legislature did not provide for a right to appeal under those circumstances, that's too bad. Therefore, why does the majority discuss the circumstances in this case at all? The only reason has to be to make its otherwise unjustifiable, arbitrary and unconstitutional decision more palatable to the readers of this Court's decisions.

¶32 It doesn't matter what the District Court found the facts to be. What matters is what the District Court and this Court conclude the law to be. Based on those conclusions, the result would be the same whether the facts were those alleged by Kempin or those found by the District Court.

¶33 The rationale in *Rogers* for concluding that appeals to the district court could be taken from justice court revocation proceedings was that a liberty interest is at stake and a trial was not available to the defendant. However, liberty interests are at stake in game violations and Kempin contends that he was denied a trial by the arbitrary forfeiture of the bond he posted. The District Court found that forfeiture of Kempin's bond was not

arbitrary and was with his implied consent. However, even if the District Court had found otherwise, it could not have entertained an appeal based on its or the majority's rationale for their decisions. Therefore, there is no basis for distinguishing the result in this case from our decision in *Rogers*.

¶34 Article II, Section 4, Mont. Const., provides in relevant part that:

> (2) the district court shall hear appeals from inferior courts as trials anew unless otherwise provided by law. The legislature may provide for direct review by the district court of decisions of administrative agencies.

¶35 The Constitution requires that district courts hear appeals from inferior courts, including justice courts. "Unless otherwise provided by law" refers to the immediately preceding requirement that appeals be heard as trials anew. It does not modify the requirement that district courts hear appeals from inferior courts. If it did, there would be no reason to put the provision in the Constitution. The legislature would always be free to decide when a person could or could not appeal from justice courts.

¶36 Justice courts have substantial authority. They can decide civil matters with amounts in controversy up to $7000. *See* § 3-10-301, MCA. They can decide criminal matters involving misdemeanors punishable by six months in prison or a fine of up to $1000 in the case of fish and game violations. According to the majority opinion, if a defendant is misled to plead guilty, if the justice court accepts a guilty plea in violation of its statutory obligation at § 46-17-203(2) to assure that it is well informed and voluntary, or if the justice court simply denies the opportunity to enter a plea or have a trial by arbitrarily, without notice, forfeiting a defendant's bond, then there is no right to appeal unless the legislature provides one. See this Court's decision in *State v. Feight*, 2001 MT 205, 306 Mont. 312, 33 P.3d 623, in addition to the majority opinion. Not only does the majority's opinion fly on the face of constitutional right to appeal justice court decisions to the district court, it potentially denies defendants the constitutional rights to due process and a jury trial found at Article II, Sections 17 and 26, Mont. Const., respectively. If, as the majority concludes, the legislature is free to limit appeals from justice courts, it is just as free to deny appeals from justice court decisions all together. Considering the rights that are at issue based on justice court jurisdiction, that result is unconscionable.

¶37 Nor do I understand the reasoning in the concurring opinion. In the dissent to *State v. Feight*, with which I agree, the two signators of the concurring opinion correctly reasoned

that by asking what appeals are permitted from justice court, this Court has its scope of inquiry backwards. That dissent explained that § 3-5-303, MCA, provides for district court jurisdiction to hear appeals from justice courts except as provided in § 46-17-203, MCA, and that § 46-20-104(1), MCA, provides for appeals by a defendant from a final judgment and orders which affect the substantial rights of the defendant. That dissent correctly concluded that the only exceptions established in § 46-17-203(2), MCA, were for defendants who plead guilty or nolo contendere and seek trial de novo. The dissent concluded that § 46-17-311(2), MCA, relied on by the majority, sets time limits for notices of appeal in only those cases where there has been a trial but does not preclude appeals in cases where there has been no trial. I agree with all these conclusions.

¶38 What I do not understand is why this case is any different. The concurring opinion states that forfeiture of bond "is equivalent to a plea of guilty or nolo contendere." However, that is not possible. The same procedural protections that are required for a guilty plea or plea of nolo contendere were not available to this defendant. Section 46-17-203, MCA, provides in relevant part that:

> (1) Before or during trial, a plea of guilty or nolo contendere may be accepted when:
>
> (a) subject to the provisions of section (3), the defendant enters a plea of guilty or nolo contendere in open court; and
>
> (b) the court has informed the defendant of the consequences of the plea and of the maximum penalty provided by law that may be imposed upon acceptance of the plea.
>
> (2) A plea of guilty or nolo contendere in a justice's court, city court or other court of limited jurisdiction waives the right of trial de novo in district court. A defendant must be informed of the waiver before the plea is accepted, and the justice or judge shall question the defendant to ensure that the plea and waiver are entered voluntarily.

¶39 In this case, Kempin's bond was forfeited as were his hunting privileges. However, no acknowledgment of guilt was taken in open court; the defendant was never informed by the court of the consequences of forfeiture, nor was he ever advised in open court that by a forfeiture, he would have waived his right to trial de novo in district court. Nothing was done to assure that the forfeiture was anything other than inadvertent. In fact, according to

the defendant, he did not know that forfeiture was going to occur. Therefore, the facts in this case are not the equivalent of a guilty plea or plea of nolo contendere as those actions are contemplated by statutory law.

¶40 The majority decisions in this case and in *Feight* could be a boon to the Montana economy. If the legislature is free to establish the jurisdictional limits of justice court, if justices of the peace are free to ignore procedural rules with impunity, and if the legislature is also free to deny the right to appeal from justice court, Montana could become a forum to entertain prosecution for all sorts of unpopular activity in this country. Surely, if the legislature is free to deny appeals from justice court, it is free to prohibit petitions for post-conviction relief as well.

¶41 This new opportunity to avoid all of the constitutional rights to due process and jury trials that are available elsewhere in the country will certainly have a strong appeal to those making the argument that traditional notions of fairness and procedural safeguards have no place in the dangerous world in which we all find ourselves. Montana could develop a cottage industry around the prosecution of unpopular and apparently threatening people. However, I do not think that is what the delegates to our constitutional convention had in mind when they specifically provided for the rights to a jury trial, due process, and an appeal to the district court from judgments in justice court. For these reasons, I dissent from the majority opinion.

/S/ TERRY N. TRIEWEILER

1. The required bonds for Kempin's violations totaled $2440. The restitution totaled $1300. Kempin was credited for payment of his bonds and restitution from the $4400 transmitted to the Justice Court. The record in this matter does not indicate if the additional $660 transmitted with the letter was applied to bonds posted by Kempin's co-defendant Peter Maul, whose name appeared on the letter with Kempin's, or for other purposes.