JUSTICE TRIEWEILER
dissenting.
¶26 I dissent from the majority opinion. Why mess around with secret military tribunals? Just bring the terrorists here. We can charge them and then sentence them and it doesn’t matter what happens in between. There is no record in justice court. Justices of the peace do not have to be lawyers and, as long as there is no trial, there is no appeal. If we are serious about fighting terrorism, this process is fool proof. It avoids all the unpredictability and time consuming procedures that surely even secret military tribunals must occasionally experience.
¶27 Furthermore, if the majority is going to rely on statutory interpretation to the exclusion of reason and the Constitution, it ought to at least get statutory interpretation correct. There is nothing in § *25 46-17-311(2), MCA, nor anywhere else in the code that prohibits appeals from justice court unless there has been a trial. The plain language simply states that when there has been a trial and judgment, a notice of appeal has to be filed within ten days.
¶28 What is left unsaid by the majority is how this case is distinguishable from our prior decision in State v. Rogers (1994), 267 Mont. 190, 883 P.2d 115, and why this result doesn’t fly in the face of Article II, Section 4, Mont. Const: What is left unsaid in the concurring opinion is how forfeiture of a defendant’s bond without prior notice to the defendant is comparable to a guilty plea or plea of nolo contendere which can only be entered by an informed defendant after questioning to assure that the plea is voluntary.
¶29 In State v. Rogers, the majority summarily dispensed with the argument that § 46-17-311(2), MCA, permits appeals from justice courts only when there has been a trial. We held that:
The problem with that conclusion, however, is that it forecloses any appeal to, or review by, any court from a justice court’s revocation of a suspended sentence. Nor does the conclusion take the legislature’s intent into account. Appeals for de novo proceedings in district courts are statutorily provided for in criminal and civil matters pursuant to § 46-17-311 and Title 25, Chapter 33, MCA, respectively. We conclude that, taken together, these statutes reflect the legislature’s intent to provide for appeals de novo to the district courts from all final justice court proceedings. [Emphasis added.]
Rogers, 267 Mont. at 193, 883 P.2d at 117.
¶30 When Kempin’s bond was forfeited and judgment was entered against him, there was a "final justice court proceeding." The effect was no less than if he had been tried in the justice court. The problem is, according to Kempin, he did not have a chance to be tried in the justice court or enter a guilty plea because his bond was forfeited without prior notice.
¶31 The majority goes to great lengths to explain that Kempin’s attorney told the justice of the peace that he wished to forfeit bond on all seven violations, that he failed to assert his constitutional rights at the time scheduled for doing so, and that he voluntarily waived his right to trial. Kempin denies all of these facts. However, what does it matter? According to the majority’s interpretation of § 46-17-311(2), MCA, and its mantra about statutory interpretation, it would not matter if all of Kempin’s allegations were true. In other words, it would not matter that he posted bond with the intention of defending himself but that he was denied the opportunity to defend himself *26 because his bond was forfeited without notice and he was never given an opportunity to appear and deny guilt. According to the majority, if the legislature did not provide for a right to appeal under those circumstances, that’s too bad. Therefore, why does the majority discuss the circumstances in this case at all? The only reason has to be to make its otherwise unjustifiable, arbitrary and unconstitutional decision more palatable to the readers of this Court’s decisions.
¶32 It doesn’t matter what the District Court found the facts to be. What matters is what the District Court and this Court conclude the law to be. Based on those conclusions, the result would be the same whether the facts were those alleged by Kempin or those found by the District Court.
¶33 The rationale in Rogers for concluding that appeals to the district court could be taken from justice court revocation proceedings was that a liberty interest is at stake and a trial was not available to the defendant. However, liberty interests are at stake in game violations and Kempin contends that he was denied a trial by the arbitrary forfeiture of the bond he posted. The District Court found that forfeiture of Kempin’s bond was not arbitrary and was with his implied consent. However, even if the District Court had found otherwise, it could not have entertained an appeal based on its or the majority’s rationale for their decisions. Therefore, there is no basis for distinguishing the result in this case from our decision in Rogers.
¶34 Article II, Section 4, Mont. Const., provides in relevant part that:
(2) the district court shall hear appeals from inferior courts as trials anew unless otherwise provided by law. The legislature may provide for direct review by the district court of decisions of administrative agencies.
¶35 The Constitution requires that district courts hear appeals from inferior courts, including justice courts. "Unless otherwise provided by law" refers to the immediately preceding requirement that appeals be heard as trials anew. It does not modify the requirement that district courts hear appeals from inferior courts. If it did, there would be no reason to put the provision in the Constitution. The legislature would always be free to decide when a person could or could not appeal from justice courts.
¶36 Justice courts have substantial authority. They can decide civil matters with amounts in controversy up to $7000. See § 3-10-301, MCA. They can decide criminal matters involving misdemeanors punishable by six months in prison or a fine of up to $1000 in the case of fish and game violations. According to the majority opinion, if a defendant is misled to plead guilty, if the justice court accepts a guilty *27 plea in violation of its statutory obligation at § 46-17-203(2) to assure that it is well informed and voluntary, or if the justice court simply denies the opportunity to enter a plea or have a trial by arbitrarily, without notice, forfeiting a defendant’s bond, then there is no right to appeal unless the legislature provides one. See this Court’s decision in State v. Feight, 2001 MT 205, 306 Mont. 312, 33 P.3d 623, in addition to the majority opinion. Not only does the majoritys opinion fly on the face of constitutional right to appeal justice court decisions to the district court, it potentially denies defendants the constitutional rights to due process and a jury trial found at Article II, Sections 17 and 26, Mont. Const., respectively. If, as the majority concludes, the legislature is free to limit appeals from justice courts, it is just as free to deny appeals from justice court decisions all together. Considering the rights that are at issue based on justice court jurisdiction, that result is unconscionable.
¶37 Nor do I understand the reasoning in the concurring opinion. In the dissent to State v. Feight, with which I agree, the two signators of the concurring opinion correctly reasoned that by asking what appeals are permitted from justice court, this Court has its scope of inquiry backwards. That dissent explained that § 3-5-303, MCA, provides for district court jurisdiction to hear appeals from justice courts except as provided in § 46-17-203, MCA, and that § 46-20-104(1), MCA, provides for appeals by a defendant from a final judgment and orders which affect the substantial rights of the defendant. That dissent correctly concluded that the only exceptions established in § 46-17-203(2), MCA, were for defendants who plead guilty or nolo contendere and seek trial de novo. The dissent concluded that § 46-17-311(2), MCA, relied on by the majority, sets time limits for notices of appeal in only those cases where there has been a trial but does not preclude appeals in cases where there has been no trial. I agree with all these conclusions.
¶38 What I do not understand is why this case is any different. The concurring opinion states that forfeiture of bond "is equivalent to a plea of guilty or nolo contendere." However, that is not possible. The same procedural protections that are required for a guilty plea or plea of nolo contendere were not available to this defendant. Section 46-17-203, MCA, provides in relevant part that:
(1) Before or during trial, a plea of guilty or nolo contendere may be accepted when:
(a) subject to the provisions of section (3), the defendant enters a plea of guilty or nolo contendere in open court; and
(b) the court has informed the defendant of the consequences of the plea and of the maximum penalty provided by law that may *28 be imposed upon acceptance of the plea.
(2) A plea of guilty or nolo contendere in a justice’s court, city court or other court of limited jurisdiction waives the right of trial de novo in district court. A defendant must be informed of the waiver before the plea is accepted, and the justice or judge shall question the defendant to ensure that the plea and waiver are entered voluntarily.
¶39 In this case, Kempin’s bond was forfeited as were his hunting privileges. However, no acknowledgment of guilt was taken in open court; the defendant was never informed by the court of the consequences of forfeiture, nor was he ever advised in open court that by a forfeiture, he would have waived his right to trial de novo in district court. Nothing was done to assure that the forfeiture was anything other than inadvertent. In fact, according to the defendant, he did not know that forfeiture was going to occur. Therefore, the facts in this case are not the equivalent of a guilty plea or plea of nolo contendere as those actions are contemplated by statutory law.
¶40 The majority decisions in this case and in Feight could be a boon to the Montana economy. If the legislature is free to establish the jurisdictional limits of justice court, if justices of the peace are free to ignore procedural rules with impunity, and if the legislature is also free to deny the right to appeal from justice court, Montana could become a forum to entertain prosecution for all sorts of unpopular activity in this country. Surely, if the legislature is free to deny appeals from justice court, it is free to prohibit petitions for post-conviction relief as well.
¶41 This new opportunity to avoid all of the constitutional rights to due process and jury trials that are available elsewhere in the country will certainly have a strong appeal to those making the argument that traditional notions of fairness and procedural safeguards have no place in the dangerous world in which we all find ourselves. Montana could develop a cottage industry around the prosecution of unpopular and apparently threatening people. However, I do not think that is what the delegates to our constitutional convention had in mind when they specifically provided for the rights to a jury trial, due process, and an appeal to the district court from judgments injustice court. For these reasons, I dissent from the majority opinion.